JOHN A. MUTCHIE, APPELLEE, V. M. L. RAWLINGS ICE COMPANY, APPELLANT.

FILED JANUARY 13, 1932. No. 28092.

*Sanden, Anderson & Gradwohl,* for appellant.

*Perry, Van Pelt & Marti, contra.*

Heard before ROSE, GOOD, DAY and PAINE, JJ., and LESLIE, District Judge.

LESLIE, District Judge.

This action is brought under the workmen's compensation act by appellee, hereafter referred to as plaintiff, against appellant, hereafter referred to as defendant.

The plaintiff alleges that defendant was engaged in the ice business in Lincoln, and that on September 18, 1930, and prior thereto plaintiff had been employed by defendant in making deliveries and doing common labor; that on the 18th day of September, 1930, he received personal injuries resulting from an automobile collision, and that said collision and resulting injuries arose out of and in the course of his employment by the defendant.

The defendant by its answer denies that the injuries plaintiff sustained arose out of and in the course of plaintiff's employment by the defendant, and also filed a counterclaim against the plaintiff for $44.01 paid to the plaintiff by the defendant under an alleged misapprehension of fact.

On a trial had before the district court on appeal from the compensation commissioner, the district court found for the plaintiff, and that the plaintiff was entitled to recover from the defendant $12 a week on account of total disability from the date of the injury to May 1, 1931, a

total of 32 weeks, and $9 a week for 183 weeks, "or for the balance of the total of 215 weeks." From this judgment the defendant prosecutes appeal to this court.

Appellant's brief presents two questions for consideration by this court: (1) Does the evidence establish that the injuries resulted from an accident arising out of and in the course of plaintiff's employment with the defendant? (2) If so, was the award to plaintiff warranted by the evidence?

On the night in question the truck in which plaintiff was riding, and which belonged to the defendant, collided with another car on Forty-eighth street, in Lincoln, as plaintiff and his son were returning to the defendant's place of business from plaintiff's home in Havelock. The plaintiff and his son, a boy between 15 and 16 years of age, had been working for defendant that afternoon, and as they were about to leave the plant, an order came in for a delivery of ice to a station at Twenty-seventh and R streets, which plaintiff and his son were directed to make. It appears from the evidence that after leaving the plant they drove to Twenty-seventh and R streets, where the ice was delivered, and then to plaintiff's home in Havelock for dinner. After dinner the plaintiff, his son, who was driving the truck, and several friends, left plaintiff's home to return the truck to the plant. In doing this, they traveled over the route ordinarily taken in going from his home to the place of business of the defendant.

There is considerable conflict in the evidence as to the conversation had between the plaintiff and Rawlings, president and manager of the defendant company, before the order for ice came in.

Plaintiff's testimony is merely that Rawlings requested him to make a delivery, and that plaintiff reminded Rawlings that he had not yet had his evening meal; that Rawlings told him he might go from the substation at Twenty-seventh and R streets to his home in Havelock for dinner, bring the truck and ice bills back, and finish up any work needed to be done at the plant.

Rawlings testified, in substance, that after plaintiff and his son had finished the day's work plaintiff asked him if he would loan him a truck to go home with, and that he told him he would do so. That at that moment Walker, an employee of defendant company, came from the office with an order for a load of ice to be delivered at Twenty-seventh and R streets, and that Rawlings requested plaintiff to take the load, saying to him: "It will not delay you much, and we will pay you for it."

It is defendant's contention that after the plaintiff delivered the load at Twenty-seventh and R streets he was using the truck in his own service and not in the service of his employer. Shortly after learning of the details of the accident, Rawlings made a statement in writing as follows:

"Shortly before 9 o'clock p. m. on September 18, 1930, while John and Orville were still working at my ice plant, a call came in from Mr. Johnson at our substation at 27th and R streets. Johnson desired some ice brought to his station. I asked John and Orville to make the delivery. Something was said by John Mutchie to the effect that he had not yet had his evening meal, and he asked my permission to go from the substation * * * to his home in the south part of Havelock for something to eat before bringing the truck to the ice plant at 601 J street. I gave him permission to do so. I have often permitted him to go home for a meal when he was somewhere in the vicinity of his home at meal time.

"I believe Mr. Mutchie said something about getting permission to keep the car at home that night instead of bringing it back to the ice plant. I think I told him he might do that if it was too late when he had finished the delivery and his evening meal, but I would much prefer that he bring the truck back to the ice plant. I believe I reminded him that it was our custom and rule to have all the company cars left at the ice plant every night. I sent both Orville and John on this delivery to 27th and R Sts., and expected them to bring the truck back to the ice plant along with the receipted delivery ticket. * * *

"The accident occurred about ten o'clock on the evening of September 18th, I believe. Shortly after the accident I was informed of it. A few days later I paid both Orville and John up to date, and paid them for work until eleven o'clock on the evening of September 18th, inasmuch as I considered that they were working for me at the time of the accident.

"(Signed) M. L. Rawlings."

It is of no consequence that plaintiff may have asked defendant, before the order came in, to permit him to take the truck for his own use for the evening. It is undisputed that the order came for the ice; that Rawlings directed plaintiff to make the delivery; that he authorized him to go from Twenty-seventh and R streets to his home in Havelock for his evening meal, and that he instructed him then to take the truck back to the plant.

Had the accident occurred between Twenty-seventh and R streets and plaintiff's residence, it is questionable whether plaintiff could be said to have been in the service of the defendant at that particular time. However, the accident occurred on Forty-eighth street, between plaintiff's home and the ice plant, where defendant had instructed plaintiff to return the truck. Not only had he instructed him to return the truck, but to resume his labors at the plant if there was anything to do.

At the time of the collision the son, also an employee of defendant, was driving the truck, but under the supervision of plaintiff, to whom Rawlings had given instructions to return the truck to the plant. Since the plaintiff took the truck out in the service of defendant, and was returning it to the plant over the route he had been directed by defendant to travel, obviously his injuries arose out of and in the course of his employment, it seems to us.

It remains to consider the award made to the plaintiff. He had been employed by the defendant since July 1. Prior to August 23 he was paid $20 a week. From August 23 to September 18 plaintiff was employed on a different wage schedule, though engaged in the same character of employ-

ment. Subsequent to August 23 he delivered ice for the defendant from one of its trucks afternoons, evenings and Sundays, and was paid 30 cents an hour. Forenoons he delivered ice with a truck which belonged to his brother, and claims that his compensation for his forenoon activities was on a commission basis. Plaintiff paid his brother for use of his truck, and after doing this, and making settlement with defendant, testified his net commission was $18 to $20 a week.

Defendant's contention is that plaintiff was an independent contractor, and that his income for the work he performed forenoons was profit rather than commission.

The trial court found that plaintiff, in the operation of his truck forenoons, was an independent contractor, and we think the evidence supports this finding. The burden was upon the plaintiff to establish his agreement with the defendant, and the record, as we view it, does not show any contract between plaintiff and defendant with reference to plaintiff's employment by defendant forenoons. There is evidence that he got his ice from defendant, that defendant directed the route plaintiff should cover and the price that should be charged for ice sold, but this is insufficient to establish a contract of employment between the parties.

The trial court awarded plaintiff $12 a week on account of total disability from the date of the injury to May 1, 1931, or for a period of 32 weeks, and found that from May 2, 1931, plaintiff was entitled to 75 per cent. of $12, or $9 a week, "for 183 weeks, or for the balance of the total of 215 weeks." The defendant urges that the evidence does not justify an award on the basis of $18 a week, that $10.50 is the maximum that can be used as a basis for compensation. That is true if we consider only what was paid to the plaintiff during the month immediately preceding the accident. However, the law under which this action is brought provides:

"In continuous employments, if immediately prior to the accident the rate of wages was fixed by the * * * hour, * * * his weekly wages shall be taken to be his average

weekly income for the period of time ordinarily constituting his week's work, and using as the basis of calculation his earnings during as much of the preceding six months as he worked for the same employer." Comp. St. 1929, sec. 48-126.

Using as a basis for calculating plaintiff's earnings during the period of time he was employed by defendant from July 1 to September 18 we find it to have been approximately $18 a week, as the trial court found.

There seems to be no controversy as to the number of weeks (32) plaintiff was totally disabled, nor that defendant paid three weeks' compensation prior to commencement of this proceeding. No finding was made by the trial court as to the extent, or probable duration, of plaintiff's temporary partial disability.

Dr. George A. Lewis testified May 30, 1931, that his examination of plaintiff following the accident disclosed fractures of the tibia and fibula of the right leg, fracture of the right arm, and injury to the chest and back, and that he was at that time unable to do manual labor. When asked whether he had an opinion as to how long it would be before the leg would be all right again, he testified it would be mere speculation on his part, that the ultimate outcome would be speculative as to time.

Dr. Hollenbeck, another of plaintiff's physicians, testified on the same day that plaintiff was not then able to do full manual labor; that he was 75 per cent. disabled from manual labor; that his total disability ceased about May 1.

It is not contended by plaintiff that his injuries are of a permanent character. Section 48-121, Comp. St. 1929, provides:

"(1) For the first three hundred weeks of total disability, the compensation shall be sixty-six and two-thirds per centum of the wages received at the time of the injury. * * *

"(2) For disability partial in character * * * the compensation shall be sixty-six and two-thirds per centum of the difference between the wages received at the time of

the injury and the earning power of the employee * * * during the period of such partial disability; not, however, beyond three hundred weeks after the date of the accident causing disability."

We find no error in the judgment of the district court as to the amount of the award. It is not denied that plaintiff was totally disabled for a period of 32 weeks. His wages being $18 a week at the time of the accident, under the provisions of subdivision 1, sec. 48-121, Comp. St. 1929, the plaintiff was entitled to $12 a week during 32 weeks of total disability. According to the evidence of Doctors Lewis and Hollenbeck, plaintiff was partially disabled at the time of the trial to the extent of 75 per cent. They gave it as their opinion that this partial disability was temporary in character, but were unable to express an opinion as to the time over which it would extend. Subdivision 2, sec. 48-121, Comp. St. 1929, provides that for disability partial in character, the compensation shall be 66 2/3 per cent. of the difference between the wages received at the time of the injury and the earning power of the employee at the time the award is made. If plaintiff's disability was 75 per cent. and his wages at the time of receiving the injury were $18 a week, the difference between the wages he was receiving at the time of the injury and his earning power at the time of the trial was $13.50; two-thirds of this is $9, which was the award made by the lower court for the period following the total disability. The judgment of the lower court is correct as to the amount plaintiff was entitled to on account of total disability, and as to the amount to be paid to him during the period of temporary partial disability following total disability, but was in error in directing that it be paid over a period of "183 weeks, or for the balance of the total of 215 weeks." Plaintiff's claim for temporary partial disability is determined by subdivision 2, sec. 48-121, Comp. St. 1929, which provides that it shall be "during the period of such partial disability; not, however, beyond three hundred weeks after the date of the accident causing dis-

ability." The language of the decree was probably due to inadvertence, whoever prepared it having in mind the provisions of subdivision 3, sec. 48-121, Comp. St. 1929, which has to do with loss of a leg.

The decree of the trial court is affirmed in all particulars except as to the period of time during which plaintiff is entitled to compensation on account of temporary partial disability. The cause is remanded, with instructions to modify the original decree to conform to the views herein expressed.

Plaintiff's attorneys will be allowed a fee of $200 on account of services in this court.

AFFIRMED IN PART, AND REVERSED IN PART, AND
REMANDED, WITH DIRECTIONS.