MARY G. COLE, APPELLEE, V. M. L. RAWLINGS ICE COMPANY, APPELLANT.

297 N. W. 652

FILED APRIL 25, 1941. No. 31060.

*Beghtol, Foe & Rankin, Walter E. Nolte* and *Rinaker, Delehant & Hevelone,* for appellant.

*Hubka & Hubka, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ.

YEAGER, J.

This is an action under the workmen's compensation laws of the state of Nebraska. It arose out of the accidental death of Clayton Cole which came about on December 28, 1938. The action was originally instituted in the compensation court by Mary G. Cole, appellee herein, widow of the deceased Clayton Cole, against M. L. Rawlings Ice Company, the employer of the deceased at the time of his

death, and Casualty Reciprocal Exchange of Kansas City, the compensation carrier of the employer. The purpose of the action was to recover workmen's compensation on account of the death of the said Clayton Cole, claimed by plaintiff to have resulted from an accident sustained in the course and growing out of his employment.

The facts which are important in a determination of this case are that Clayton Cole entered the regular employ of M. L. Rawlings Ice Company on or about July 4, 1938, and so continued to December 10, 1938. His salary or wage during this period was $40 a month. On December 10, 1938, he was discharged on account of seasonal decline in business, but at the time he was informed that if his services were required, and he was available, he would be called, and when called would be paid at the rate of $2.50 a day, or 25 cents an hour. On December 28, 1938, Cole was called for work and was sent from Wymore, Nebraska, to Lincoln, Nebraska, to return a truck. On the return trip the truck overturned, and Cole sustained injuries from which he died on the same day. The employer paid to the widow wages for one day in the amount of $2.50. At the time of the call the employer had employment for Cole for about a week or longer.

The case was first tried to one judge of the compensation court. The defendant, being dissatisfied with the award, sought and obtained a rehearing before the full compensation court. An appeal was taken from the award of the full court to the district court, where the record made in the compensation court was reviewed. On the basis of this review the district court vacated the award of the compensation court, which was for $6 a week for 325 weeks, together with $6 for medical expense and a funeral allowance of $150, and made an award of $10 a week for 325 weeks, without changing the allowance for medical and funeral expenses, against the defendant, Melvin L. Rawlings, who was found to be the sole owner of M. L. Rawlings Ice Company. Judgment was rendered accordingly.

From this award and judgment by the district court, the defendant, Melvin L. Rawlings, has appealed to this court. Since appeal was taken to this court Melvin L. Rawlings has died. Through proper proceedings the case now proceeds with Walter Vasey, administrator with the will annexed of the estate of Melvin L. Rawlings, substituted as appellant.

The appellant admits the employment, that deceased was injured in the course of his employment, and that the plaintiff is entitled to a recovery under the workmen's compensation laws, but not at the rate and in the amount fixed by the district court.

Two issues are presented for determination on this appeal. The first one presents a procedural question, dealing with the power of the district court to hear the case on appeal from the compensation court. All necessary steps were taken to confer jurisdiction on the district court, but appellant contends that the court lost jurisdiction to hear the case since it was not tried within the time fixed by statute, that is, within 14 days after the filing of the bill of exceptions in the district court. In support of his contention appellant points out that the hearing was had 73 days after the filing of the bill of exceptions, and directs our attention to section 48-174, Comp. St. Supp. 1939, the pertinent part of which is as follows: "Within fourteen days after the filing of the bill of exceptions the district court or judge thereof in or out of term time shall proceed to hear argument of counsel on the contentions raised in such petition and render judgment thereon according to the form of law."

This question has never before been presented to this court. However, to some extent an analogy is found in the recent case of *Henderson v. Wilson*, 137 Neb. 693, 291 N. W. 96. In that case a copy of the petition had not been served on the adverse party as provided by statute. This court in the opinion said: "It necessarily follows that, inasmuch as the defendant met all the requirements of the compensation law by filing his petition and transcript in due time, the

district court obtained jurisdiction, and the failure of the clerk of the district court to carry out the duties enjoined by the compensation law, over which this defendant had no control, does not deprive defendant of his right of review in the district court."

In the same opinion it is stated: "The right of appeal is a substantial one to be sustained if possible. Technical refinements of interpretation will not be indulged in to defeat an appeal. It is only when the clearly expressed language of statutory requirements for appeal have not been met that a court will dismiss an appeal for want of jurisdiction."

Under the statute in question here, no duty is imposed upon either appellant or appellee to see to it that the case is heard within 14 days. The burden imposed is on the "district court or judge thereof." To hold that the right to have a hearing shall be denied if not had within 14 days would create hazards in the light of known and common experience that the legislature could not have contemplated when this statute was enacted. It is well known that district judges are frequently, for a variety of reasons, not available in their districts for particular cases for periods far in excess of 14 days. It certainly was not contemplated that such situations should operate to defeat the right to hearing on appeal of cases coming to the district court from the full compensation court. This language, viewed in the light of reason and the purposes of the workmen's compensation laws, must be held to be directory only, and not mandatory.

The other issue is the amount or rate of the award. The appellee contends that the award should be at the rate of $10 a week for 325 weeks, and appellant contends for a rate of $6 a week.

Appellant urges that the rate of compensation should be computed on the basis of the average weekly wage of the deceased from July 4, 1938, to December 28, 1938, being the full period, or the combined periods of employment of deceased by the appellant, all of such period or periods having been within the six months immediately preceding the

date of the accident. He urges that under the facts of this case, as hereinbefore substantially set forth, the employment must be considered to have been continuous, thus making applicable the following provision from section 48-126, Comp. St. Supp. 1939: "In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour or by the output of the employee, his weekly wages shall be taken to be his average weekly income for the period of time ordinarily constituting his week's work, and using as the basis of calculation his earnings during as much of the preceding six months as he worked for the same employer; the calculation, furthermore, to be made with reference to average earnings for a working day of ordinary length and exclusive of earnings from overtime."

As against this, the appellee contends that this statutory provision has no application since the employment was not continuous. She contends that the employment, which began on July 4, 1938, ended on December 10, 1938, and that a new contract of employment was entered into, effective December 28, 1938, which formed the basis for computation of workmen's compensation.

The evidence on this proposition was furnished by Warren Kelley, manager of the M. L. Rawlings' Wymore plant, and M. L. Rawlings himself. Warren Kelley testified as follows regarding the discharge and call to work on December 28, 1938: "Q. Was he in the employ of the M. L. Rawlings Ice Company before you called him? A. No. He was discharged from his duties on December 10. * * * Q. Did you overhear any conversation between Mr. Rawlings, Mr. M. L. Rawlings, and Mr. Cole, relative to his discharge and dismissal? A. I did. Q. And where did that conversation take place? A. In the office of the Wymore plant. Q. Just repeat that conversation. You can just testify to that conversation. What Mr. Rawlings said, and what Mr. Cole said, and just as the conversation took place. A. Mr. Rawlings told Mr. Cole that, due to a drop in the ice business, he would have to discharge him, but that at any time

we had any extra work, and if Mr. Cole wasn't doing anything else, he would call him. Q. He would or might call him? A. He might call him, if he had any extra work." M. L. Rawlings testified: "Q. Mr. Rawlings, about the 10th day of December, in your office, you had a conversation with Clayton Cole, didn't you? A. Yes, sir. * * * Q. Did you tell Mr. Clayton Cole then that he was dismissed or discharged? A. Yes, sir, on account of the sloughing off in business, and that we would give him extra work at the rate of $2.50 a day, if he was called on, which he agreed to do. Q. That is, if he was called on? A. Yes. Q. * * * After you discharged him, did you consider that he was in your employ? A. No, sir. * * * Q. Did you consider you had any kind of a contract for services with Clayton Cole? A. No, sir."

This evidence discloses the severance of employment. There was no further contact until deceased was called for work on December 28, as was disclosed by the testimony of Warren Kelley, which is as follows: "Q. Did you employ him on December 28, 1939? A. 1938. Q. Yes; 1938? A. I did. * * * Q. And when did he come to work, on December 28, 1938? A. Between 6 and 7 o'clock in the morning, sometime or other. I don't remember exactly."

This evidence clearly indicates that within the meaning of the workmen's compensation law there was not continuous employment from July 4, 1938, to the date of the accident. There was a complete severance of the employer-employee relationship on December 10, and a new one created on December 28. *Davis v. Lincoln County*, 117 Neb. 148, 219 N. W. 899. It is true that the proposal for the new employment was made on December 10, but there is no evidence of acceptance until deceased responded to the call on December 28, 1938.

Appellant cites *Mutchie v. M. L. Rawlings Ice Co.*, 122 Neb. 297, 240 N. W. 267, in support of the theory that compensation must be computed on an average wage from July 4 to December 28, 1938. We do not find that case to be in point here. In that case the employment was in fact

continuous. There was no discharge. In that case the employee had been employed for several months on the basis of a weekly wage, then a short time prior to the happening of the accident his wage or salary was changed to an hourly basis and he worked only part time, but employment was continuous.

We hold that the employment of deceased had not been continuous, and there being no claim that it was seasonal, it then follows that compensation in this case must be based upon the contract of hiring in force at the time of the accident. Comp. St. Supp. 1939, sec. 48-126. *Davis v. Lincoln County, supra; Carlson v. Condon-Kiewit Co.,* 135 Neb. 587, 283 N. W. 220; *Drum v. Omaha Steel Works,* 129 Neb. 273, 261 N. W. 351; *Gorham v. Kiewit Sons Co.,* 129 Neb. 277, 261 N. W. 353.

It is not disputed that under the contract of hiring deceased was to receive $2.50 a day for his work. Then reducing this to a weekly rate by taking six days to be a week, which is proper and not unfavorable to appellant in the absence of evidence showing the length of the business week in the business operated by the employer of deceased, the weekly wage was $15. *Carlson v. Condon-Kiewit Co., supra.*

Appellee then, as the widow of deceased, would be entitled to recover 66-2/3 *per centum* of the wages of the deceased for 325 weeks, or $10 a week for such period of time. She is also entitled to recover $6 for medical expense, and a funeral allowance in the sum of $150. Comp. St. Supp. 1939, sec. 48-122.

For the reasons herein set forth, the judgment of the district court is in all respects affirmed, and an attorney's fee in the sum and amount of $150 is allowed for the services of attorney for appellee on appeal to the supreme court.

AFFIRMED.