In re Application of City of Schuyler, Nebraska. City of Schuyler, Nebraska, a municipal corporation, appellant, v. Cornhusker Public Power District, appellee, Spencer Packing Company, an Iowa corporation, intervener-appellee.

150 N. W. 2d 588

Filed May 5, 1967. No. 36490.

Sidner, Gunderson, Svoboda & Schilke, for appellant.

Mattson, Ricketts & Gourlay, for appellee.

Stewart, Calkins & Duxbury and David L. Crawford, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and MURPHY, District Judge.

BOSLAUGH, J.

This is an appeal from an order of the Nebraska Power Review Board denying an application of the City of Schuyler, Nebraska, to modify its service area. The protestant and appellee is the Cornhusker Public Power District.

The applicant owns and operates an electrical generation and distribution system which serves the area within its corporate limits and certain areas beyond the limits. The protestant owns and operates transmission and distribution lines in Colfax, Platte, Nance, and Boone Counties and a part of Greeley County. It obtains its power supply by purchase of energy from the Nebraska Public Power System.

The Spencer Packing Company, which intervened in support of the application, plans to construct a large meat-packing plant near Schuyler, Nebraska, on a part of the northwest quarter of Section 16, Township 17 North, Range 3 East of the 6th P. M., in Colfax County, Nebraska. The plant will have a capacity of 150 cattle per hour. It will be a fully integrated plant with killing floors, coolers, and facilities for edible and inedible rendering. Because of the nature of the plant and the products which will be handled, the packing company wants to obtain the most reliable service that is available with a minimum of outages. The anticipated connected load is approximately 3,500 kilowatts.

A revised service area agreement, approved by the Power Review Board on May 12, 1965, shows the east line of the west half of Section 16 as the boundary between the service areas of the applicant and the protestant. According to this agreement, the northwest quarter of

Section 16 is included in the service area of the protestant.

On March 25, 1966, the applicant by ordinance approved the voluntary annexation of a tract situated in a part of the northeast quarter of Section 16. On May 10, 1966, the applicant by ordinance approved the voluntary annexation of an additional tract situated in the northeast quarter of Section 16. The effect of the annexation was to include a part of the area immediately east of the packing plant site within the corporate limits of the applicant, and to include the packing plant site within the zoning area of the applicant. The application sought a modification of the applicant's service area so as to include the new zoning area of the applicant within its service area.

The protestant alleged that the annexations were void and that the application should be denied.

A hearing was had upon the application on May 18, 1966. Thereafter, the parties moved for permission to withdraw their rest and introduce additional evidence. On July 6, 1966, the board sustained a motion of the protestant to reopen the hearing, and a further hearing was held on August 3, 1966. On August 4, 1966, the board entered its order denying the application, one member dissenting. The applicant's motion for rehearing was overruled and it has appealed.

The board found that it had no statutory authority to determine the validity of the annexation ordinances of the applicant and made no finding in regard to the validity of the annexation. The board was correct in recognizing its lack of jurisdiction to determine the validity of the annexation of territory to a municipality. An administrative board has no power or authority other than that specifically conferred upon it by statute or by a construction necessary to accomplish the purpose of the act. City of Auburn v. Eastern Nebraska Public Power Dist., 179 Neb. 439, 138 N. W. 2d 629. So far as this pro-

ceeding is concerned, the annexation must be presumed to be valid.

The board found that the service area agreement between the parties, approved May 12, 1965, was a valid, existing voluntary service area agreement. The applicant claims that the agreement is not binding on it because there is no evidence that the execution of the agreement by the superintendent of its department of utilities was authorized by the mayor and council.

The statute, which became effective May 16, 1963, provides that on or before July 1, 1964, suppliers shall enter into agreements specifying their service areas. § 70-1002, R. R. S. 1943. A supplier which has not entered into a service area agreement by July 1, 1964, is required to file a statement showing what it claims as its service area. § 70-1004, R. R. S. 1943.

The agreement approved on May 12, 1965, is a revised agreement. The record indicates that a previous service area agreement between the parties had been approved on July 14, 1964. Upon their joint application the earlier agreement was revised and the boundary between the service areas was moved to the east to permit the protestant to serve a customer that the applicant did not wish to serve.

The evidence shows that the superintendent of utilities was specifically authorized to execute other service area agreements on behalf of the applicant. The applicant does not claim that the agreement, approved May 12, 1965, was filed without its knowledge or consent or that a dispute existed and it had attempted to comply with section 70-1004, R. R. S. 1943. There is nothing to indicate that the applicant raised any question as to the validity of the May 12, 1965, agreement until the present controversy arose.

Under the circumstances of this case, the applicant should not be permitted to question the validity of the agreement at this time. A municipal corporation may be estopped by its official acquiescence in, and approval of,

acts originally unauthorized. May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448. The record sustains the finding of the board that the agreement approved May 12, 1965, was a valid, existing agreement. A service area, however, is subject to modification.

A service area is subject to modification at any time by the procedure prescribed in section 70-1010, R. R. S. 1943. Modification may be accomplished by agreement, with the approval of the board, or upon the application of a supplier after notice and hearing.

The application filed in this case was a request for the modification of a service area. The applicant alleged a change of circumstances in that its corporate limits had been extended and its zoning area enlarged. The question presented is whether a municipality is entitled to enlarge its service area to include extensions of its zoning area.

The purpose of the statute was to eliminate conflict and competition between public corporations furnishing electrical energy to retail customers. § 70-1001, R. R. S. 1943; City of Auburn v. Eastern Nebraska Public Power Dist., *supra*. The fixing of retail service areas is the method by which the purpose of the statute is accomplished.

At the time this legislation was under consideration, the Legislature was concerned with the problems that arise where there are multiple suppliers within a municipal area. The act evidences an intention to avoid similar situations in the future.

The act provides that a municipality which operates a retail system shall have a preference within its corporate limits and zoning area. Section 70-1008, R. R. S. 1943, provides: "In the absence of an agreement between the suppliers affected and notwithstanding the provisions of subdivisions (1) to (5) of section 70-1007:

"(1) In the zoning area surrounding any municipality and outside the corporate limits thereof, if such municipality operates a retail system, it shall have the right to serve such zoning area at retail except as to

such customers as are presently served by other suppliers. Such a municipality may acquire the facilities of other suppliers in such zoning area by negotiation.

"(2) In determining the service area of a municipally-owned electric system, there shall be included, as a maximum, the corporate area of the municipality, the zoning area outside the corporate limits of such municipality, and the area beyond the zoning area which is presently being served by such municipality, including not more than the area one half mile on each side of the line presently used by such municipality to serve its existing customers, except for customers presently served by other suppliers. When any new customer outside the corporate limits of any municipality and outside the zoning limits surrounding such municipality locates closer to electric lines owned by other suppliers in the municipal service area as provided for in this section, in case of disagreement, the question of which supplier shall serve such new customer shall be submitted to the Nebraska Power Review Board for determination under the standards set forth in section 70-1007."

The logical area into which a municipality expands is its zoning area. If the retail service area of a municipality includes the zoning area, the problem of multiple suppliers within the municipal area will be lessened.

The board took the position that a municipality has the right to serve retail customers in its zoning area only in the absence of an agreement between the suppliers affected. This interpretation fails to give effect to the spirit of the act and the purpose of the legislation. If the boundaries of the retail service areas are to be rigid and remain fixed without regard to the expansion of municipalities, the result will be multiple suppliers within the municipal areas. We think the more reasonable interpretation of the act is that which permits modification of service areas to include extensions of zoning areas within municipal retail service areas.

In this case there are no customers presently being served in the disputed area and the applicant seeks only to serve new customers. The applicant has at least equal, if not superior, capabilities to serve the area. As we view the record, the evidence does not sustain the denial of the application. The order of the Nebraska Power Review Board is, therefore, reversed.

REVERSED.