In re Application of the Omaha Public Power District.
Omaha Public Power District, appellee, v. Nebraska
Public Power Project, appellant.

243 N. W. 2d 770

Filed July 7, 1976. No. 40517.

Dennis R. Keefe of Naylor & Keefe, for appellant.

Stephen G. Olson of Fraser, Stryker, Veach, Vaughn
& Muesey, Delbert E. Dirrim, and Gene Watson, for
appellee.

Heard before White, C. J., Spencer, Boslaugh,
McCown, Newton, and Clinton, JJ.

Boslaugh, J.

This appeal involves an application by the Omaha
Public Power District for authority to construct a 1,150
megawatt nuclear-fueled electric generation facility in
Washington County, Nebraska. The Nebraska Power
Review Board approved the application on October 23,
1975.

The applicant is a public corporation engaged in the
production, transmission, and sale of electrical energy in
Omaha, Nebraska, and the surrounding area. It owns
and operates a nuclear-fueled generation facility in
Washington County, Nebraska, known as Fort Calhoun
Station Unit No. 1, which has been in operation since
1973. The proposed plant would be located adjacent to
the existing plant and would be known as Fort Calhoun
Station Unit No. 2.

The appellant is the Nebraska Public Power Project,

a group of concerned citizens of Nebraska who filed a formal protest to the application. No alternate power supplier objected to the application.

The Legislature established the Power Review Board and gave it limited jurisdiction over the suppliers of electricity so that the duplication of facilities could be avoided and eliminated and the settlement of rate disputes facilitated. § 70-1001, R. R. S. 1943. Before any electric generation facilities may be constructed, an application must be filed with the board; a hearing must be held, at which any interested party may appear; and the application must be approved by the board.

The application was filed on June 5, 1975, and set for hearing on July 23, 1975. On July 11, 1975, the protestant moved for a continuance alleging it had inadequate time to prepare for the hearing on July 23, 1975. The motion was overruled on July 21, 1975, and the hearing commenced July 23, 1975.

The first assignment of error relates to the jurisdiction of the board. The protestant contends the board lost jurisdiction over the application because the evidentiary hearing before the board was not held within 30 days after the application was filed as required by section 70-1013, R. R. S. 1943.

Section 70-1013, R. R. S. 1943, provides that upon the filing of an application under section 70-1012, R. R. S. 1943, the board shall fix a time and place for hearing and give notice to alternate power suppliers deemed affected by the application; and further provides the hearing shall be had within 30 days unless for good cause shown the applicant shall request a continuance, but in any event the hearing shall not be more than 90 days from the filing of the application.

It is apparent that the purpose of the statute is to assure the applicant a prompt hearing after the application has been filed. It is difficult to see how the protestant could claim prejudice because of a delay of the

hearing, particularly where the protestant itself requested a continuance.

Statutory provisions of this nature are designed to further the orderly and prompt conduct of official business and are usually held to be directory rather than mandatory or jurisdictional. In Tash v. Ludden, 88 Neb. 292, 129 N. W. 417, this court quoted with approval from Cooley, Constitutional Limitations (6th Ed.), p. 92, as follows: " 'Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute.' " See, also, Cole v. M. L. Rawlings Ice Co., 139 Neb. 439, 297 N. W. 652; State ex rel. Kobes v. Grimm, 115 Neb. 230, 212 N. W. 437; Burkley v. City of Omaha, 102 Neb. 308, 167 N. W. 72; Hurford v. City of Omaha, 4 Neb. 336; Lamelo v. Mayo (Fla. App.), 204 So. 2d 550.

The requirement in section 70-1013, R. R. S. 1943, that the hearing before the Power Review Board be held within 30 days unless a continuance has been requested by the applicant is directory and not mandatory. The board did not lose jurisdiction over the application in this case because there was not strict compliance with the terms of the statute.

The other assignments of error relate to the sufficiency of the evidence to sustain the order of the board approving the application.

Before an application may be approved the board must find that the applicant can most economically and feasibly supply the electric service resulting from the proposed construction and without unnecessary duplication of facilities or operations. The board here made detailed findings and concluded that the applicant could

most economically and feasibly supply the electric service resulting from the proposed construction without unnecessary duplication of facilities or operations.

The protestant contends the evidence does not support the finding that the proposed construction will serve the public convenience and necessity and provide adequate electric service at as low an overall cost as possible, consistent with sound business practices. The protestant contends the evidence did not demonstrate a need for the proposed facility; a fossil-fueled facility would be more economical than a nuclear facility; and no responsible plan exists for the permanent storage of radioactive wastes.

The proposed facility is to be a joint project between the applicant and the Nebraska Public Power District (NPPD). The applicant and NPPD have entered into an ownership agreement which provides for the construction of the proposed facility. Up to 20 percent of the proposed facility will be available to other power suppliers, such as municipalities. The balance will be owned in equal shares by the applicant and NPPD.

The applicant produced evidence that without the construction of the proposed facility it will not have the capability to meet its customers' demands by 1986. There was evidence that NPPD will be unable to supply its customers' demands after 1983 if it does not then have available its share of the capacity of the proposed facility. These calculations were based on estimates of what the future demand for energy will be and, as pointed out by the protestant, there will be some excess capacity when the proposed unit is first placed in operation. While there may be some basis for a difference of opinion as to whether the proposed facility is the best possible solution to the problem of supplying the future demands of the customers of the applicant and NPPD, there was substantial evidence that a need exists for the proposed facility. That is sufficient to sustain the finding of the board.

This court cannot interfere with a decision of the Power Review Board unless there is no evidence to sustain the action of the board, or, for some other reason, the record shows the action of the board is arbitrary and unreasonable. City of Auburn v. Eastern Nebraska Public Power Dist., 179 Neb. 439, 138 N. W. 2d 629.

With respect to the question of whether a fossil-fueled facility would be more economical than a nuclear facility, the evidence shows that the applicant operates both types of facility. The applicant now has under construction a 575 megawatt coal-fired facility, known as Nebraska City Unit No. 1, which it expects to have in operation in 1979. The evidence produced by the applicant tended to show that the construction cost differential between construction of a nuclear-fueled generation facility and a comparably sized coal-fired unit is recaptured rapidly because of the fuel cost savings inherent in nuclear generation facilities. There was evidence which showed that the overall cost savings of a nuclear-fueled facility more than offset its higher operation and maintenance costs.

With respect to the problem of storing radioactive wastes, the evidence shows that this is a problem of national or international proportions and no satisfactory permanent solution has been found. However, reprocessing plants are under construction and it is at least possible that a use may be found for the wastes that must be stored at this time. There are a number of regulatory agencies in this field and there is no evidence that any of these agencies consider the storage problem to be of sufficient magnitude to outweigh the benefits to be derived from the use of nuclear power.

As we view the record there was substantial evidence to support all the findings of the board. The order approving the application must, therefore, be affirmed.

AFFIRMED.