REQUESTED BY: Gary Gustafson, Executive Director Nebraska Power Review Board
You have requested the opinion of this office regarding two questions related to generation of electric power by private entities in Nebraska. Your questions state:
 Does a private electrical power operator have the right to locate a plant in Nebraska and to provide power to an existing customer of a public power supplier when that customer is located in the supplier's retail service area?
 If a private power supplier can locate in Nebraska and serve customers other than themselves, does the Power Review Board have jurisdiction over whether the plant can be constructed unless authorization is granted by the Power Review Board?
You explain in your opinion request that Rail Environmental Services, Inc. ("RES") has contacted the Power Review Board ("the Board") to inform the Board that it intends to construct an electric power plant near North Platte, Nebraska. The power plant will burn waste from the Union Pacific Railroad Company's North Platte facility and will in turn supply electricity and steam to the railroad. The Union Pacific facility's electric power is currently being supplied by the City of North Platte. RES wishes to sell whatever excess electrical power it produces to the Nebraska Public Power District ("NPPD"). According to a letter from RES to the Board, RES would like to enter into a 20 year contract covering the sale of its unused power to NPPD. Your opinion request states that the Federal Energy Regulatory Commission ("FERC") has approved the proposed plant, but FERC's approval did not deal with Nebraska law, and the Board believes it would have no impact on the Board's actions or authority.
Nebraska is unique in that it is the only state with an electric power system comprised entirely of public power entities. As you state in your opinion request, the ability of a private power supplier constructing a plant and taking existing customers from public power sources could have a substantial impact on Nebraska's public power system.
There are essentially three separate questions involved in your opinion request. We will address each issue in the order presented.
 Does a Private Power Electrical Power Generator have the Right to Construct a Plant in Nebraska?
Our research did not uncover any statute or case precluding private entities from constructing and operating electric power generating facilities in the State of Nebraska. A review of Nebraska's statutes dealing with electric power appears to indicate that the Legislature anticipated that only publicly owned power generating facilities would serve Nebraska's electricity needs. In § 70-1301, it states that it is Nebraska's public policy to provide adequate electrical service at the lowest possible cost. In furtherance of that policy, "electric service should be provided by non-profit entities. . . ." Neb. Rev. Stat. § 70-1301. But § 70-1301
is a policy statement dealing with Chapter 70, article 13, which controls arbitration of disputes. None of the statutes in article 13 prohibit privately owned electric plants. There is no language precluding private entities from constructing, owning, or operating electric power plants in any of the other statutes in Chapter 70, either.
The legislative history of the statutes creating Nebraska's public power entities cannot be consulted in this particular instance. We have learned from the Clerk of the Legislature's office that records for legislative histories were not kept prior to 1937. The enabling legislation for Nebraska's public power system was initially created in 1933. See Neb. Rev. Stat. §§ 70-601 to 70-671.
There is some statutory language supporting the contention that non-publicly owned electric power plants can exist in Nebraska. The first sentence in Neb Rev. Stat. § 70-1002(1) (1990) states:
 (1) All suppliers of electricity, including public power districts, public power and irrigation districts, individual municipalities, registered groups of municipalities, electric membership associations, and cooperatives, serving customers at retail in adjoining service areas shall have the authority to enter into written agreements with each other specifying either the service area or customers each shall serve with electric energy.
Other statutes contain the same or similar language referring to all suppliers of electricity, not only public power entities. See Neb. Rev. Stat. §§ 70-1002.01 and70-1502 (1990). If non-public entities were prohibited from owning or operating electric power generating facilities, there would be no reason for the Legislature to have used language referring to all electric suppliers, including
those that are publicly owned. The use of the broad category "all suppliers of electricity," which would encompass, but not be limited to, publicly owned electric suppliers, may lead to the conclusion that privately owned suppliers are not prohibited. We note that Gary Gustafson, the Board's Executive Director, informed us that the Board believes there is nothing prohibiting a private entity from constructing an electric plant in Nebraska.
We conclude that there is nothing prohibiting a private entity from constructing an electric power generating plant in Nebraska.
 Does a Private Electrical Power Operator have the Right to Provide Power to a Public Power Supplier's Existing Customers Located Within the Public Power Supplier's Designated Retail Service Area?
Although a private power supplier may be able to build and operate an electric plant, it appears that private electric suppliers are prohibited from serving customers who are located within a public power agency's service area and are already being served by the public power agency, at least until it can show that the current supplier is unable or unwilling to provide adequate electric service. The Board's opinion request indicates that the Board interprets Nebraska's public power statutes to disallow private electric plants from taking customers located in an established service area from the public agency already supplying electricity to that service area. The Board's Executive Director confirmed to our office that the Board does, in fact, believe that a private electric generator would be prohibited under most circumstances from taking customers located in a public power supplier's designated service area that are already being served by that public power agency. The Board's interpretation seems to comport with Nebraska's statutes establishing electric power service areas. See Neb. Rev. Stat. §§ 70-1001 to 70-1027 (1990) and §§ 70-1101 to70-1106 (1990).
Neb. Rev. Stat. § 70-1002(1) provides that all adjoining suppliers of electricity at retail have the authority to enter into agreements establishing their respective service areas or customers to be served. The statute also requires all such agreements to be submitted to, and be approved by, the Board. If adjoining electric retail suppliers cannot come to an agreement, the matter is referred to the Board. Under this statute, electric suppliers are required to enter into agreements specifying their respective service areas. City of Schuyler v. CornhuskerPublic Power Dist., 181 Neb. 704, 707, 150 N.W.2d 588,590-91 (1967). See also Committee Records on LB 220, 73rd Neb. Leg., 1st Sess., Introducer's Statement of Purpose (February 11, 1963).
Neb. Rev. Stat. § 70-1004 requires that all suppliers of electricity file maps indicating their service areas under their agreements with adjoining electrical suppliers. In the absence of an agreement, the electric supplier must file a statement explaining why it has not entered into agreements with its adjoining electric suppliers and showing what it claims to be its service area.
The Legislature declared the public policy of Nebraska to be to avoid and eliminate conflict and competition between public power districts and other electric suppliers and to avoid and eliminate the duplication of facilities and resources resulting from such conflict and competition and to facilitate the settlement of rate disputes between suppliers of electricity. Neb. Rev. Stat. § 70-1001 (1990). See also §70-1101 (1990). However, these statutes only refer to preventing competition between public power agencies, and do not specifically state that they apply to private electric suppliers. The Nebraska Supreme Court, in addressing a contract dispute case, observed that the legislative history of § 70-1001
shows that the statute's purpose was "limited to legalizing service area boundary agreements between public power districts and municipally owned electric systems and to establishing a power review board." Southern Nebraska Rural Public PowerDist. v. Nebraska Electric Generation and TransmissionCooperative, Inc., 249 Neb. 913, 920, 546 N.W.2d 315, 321
(1996).
Although the preceding statutes indicate a general policy in disfavor of competition, it is not entirely clear whether their provisions apply directly to private entities. Other statutes may directly apply to private electric generators, though. Section70-1501 states:
 It is the public policy of this state to provide its citizens with adequate electric service at as low an overall cost as possible, consistent with sound business practices, and in furtherance of such policy it is necessary to avoid and eliminate conflict and competition among and between suppliers of electric power and energy and to avoid duplication of facilities and resources which result from such conflict and competition.
Neb. Rev. Stat. § 70-1501 (1990).
The Nebraska Supreme Court has also held that a preamble or policy statement in an act is generally not self-implementing but may be used to assist in interpreting the legislative intent of the act which the policy statement is a part. SouthernNebraska Rural Public Power at 920, 546 N.W.2d at 320.
The term "electric suppliers" is defined to mean "any legal entity supplying, producing, or distributing electricity within the state for sale at wholesale or retail." Neb. Rev. Stat. §70-1023 (1990). Section 70-1023 states its definitions are intended for the purposes of §§ 70-1023 to 70-1027. Although not specifically provided for definitional purposes of other statutes, this definition provides the best available indication of the Legislature's understanding of what that term means as it is used in other statutes dealing with electric power issues. No other definition is provided for the term "electric suppliers."
Section 70-1011 prohibits any electric supplier from offering electric service to additional ultimate electric users outside its service area or to construct new electric lines into the service area of another electric supplier in order to furnish electric service in the competitor's service area. Prior to taking another supplier's customers, an electric supplier must first apply to the Board and receive its approval. This statute appears to provide strong evidence that a private electric power plant would not have the right to take current customers from a public power agency already serving that particular service area.
Section 70-1011 goes on to state that the Board shall only grant approval of encroachment into an existing service area if the desired customer "cannot or will not be furnished adequate electric service by the supplier in whose service area the customer is located, or that the provision thereof by such supplier would involve wasteful and unwarranted duplication of facilities." The statutory language makes it obvious that the Legislature disfavors allowing customers within an established service area to be taken by alternative suppliers, absent a failure to adequately serve the customer by the entity supplying that service area. Unless a newly constructed private electric plant could demonstrate that a desired customer, such as the Union Pacific Railroad's North Platte facility, is not being adequately served, the new supplier would be prohibited from taking that customer from the public agency currently supplying its electricity.
The statutes and case law indicate that a private electric power supplier is prohibited from taking existing customers located within a public power agency's designated service area unless the private supplier can demonstrate to the Board that the public agency is unable or unwilling to provide adequate service to the customer. The matter does not appear to be entirely clear, however, due to the fact that the statutes involved do not explicitly state whether they apply to private as well as public electric energy suppliers.
 Does the Power Review Board have Jurisdiction to Require the Plant Obtain the Board's Authorization Prior to Construction?
The Board was created by Neb. Rev. Stat. § 70-1003. The last sentence in § 70-1003(1) (1990) states, "The board shall have jurisdiction as provided in Chapter 70, article 10." The Board is repeatedly referred to as having authority over "any" and "each" electric power generator and/or supplier throughout article 10. See Neb. Rev. Stat. §§ 70-1004,70-1005, 70-1015, 70-1017, 70-1025 (1990). There is no language in article 10 restricting the Board's authority to only publicly owned electric suppliers. Neb. Rev. Stat. § 70-1023(2) defines the term "electric suppliers" to mean "any legal entity supplying, producing, or distributing electricity within the state for sale at wholesale or retail."
The language in Neb. Rev. Stat. § 70-1012 (1990) is also very important to this issue. It states:
 Before any electric generation facility or any transmission lines or related facilities carrying more than seven hundred volts are constructed or acquired by any supplier, an application, filed with the board and containing such information as the board shall prescribe, shall be approved by the board. . . .
The statute continues on to list circumstances under which the Board's approval shall not be required. The Board would have to determine whether any of the listed exceptions are present in a situation such as the proposed RES facility. Section 70-1012
requires that any supplier desiring to construct any electric power plant must file an application with the Board and obtain the Board's approval. The statute applies to both retail and wholesale electricity suppliers. City of Auburn v. EasternNebraska Public Power District, 179 Neb. 439, 445,138 N.W.2d 629, 634 (1965). The statute does not contain language limiting its application solely to public entities.
The Court, in the City of Auburn case, analyzed § 70-1012 and referred to the use of the term "any" as used in that statute. The Court found that the Legislature's reference to "any" electric generation facility by "any" supplier meant that the statute's application was not limited to retail suppliers, either by specific language or by implication. Based on the Court's analysis, it might also be inferred that the term "any" is broad enough to include both public and private suppliers and facilities. Section 70-1012 is not limited to public entities by specific language and does not appear to imply this conclusion.
The Court did state that the plain language in the Act confers power on the Board to exercise its stated authority as to construction of, in the City of Auburn case, certain transmission lines, whether for wholesale or retail sale "by any public corporation specified in the act." Id. at 446,138 N.W.2d at 634. The Court did not specify whether this language was intended to mean merely that the statute applies to all the public corporations listed in § 70-1012 or that the statute's application is restricted to public corporations.
The Nebraska Supreme Court has addressed issues involving construction of electric generation facilities. In OmahaPublic Power Dist. v. Nebraska Public Power Project,196 Neb. 477, 243 N.W.2d 770 (1976), the Omaha Public Power District applied to build a nuclear-fueled electric generation plant. A group of Nebraska citizens filed a protest to the application. The Supreme Court noted that applicants wishing to construct electric power plants must have the plans approved by the Board. The Court stated:
 Before any electric generation facilities may be constructed, an application must be filed with the board; a hearing must be held, at which any interested party may appear; and the application must be approved by the board.
Id. at 478, 243 N.W.2d at 771.
It should be pointed out that the above case dealt with a public power district's plans to construct an electric plant, as opposed to a private entity proposing to build one. However, the Court did not indicate the application and approval process would be any different for a private entity. The language concerning the requirement to file an application with and obtain approval from the Board was couched in broad terms that indicate the requirements are intended to cover the procedure for all new electric plants, not only publicly owned ones.
Also, as previously discussed in this opinion, § 70-1011
requires that any electric supplier wishing to provide service to customers within another supplier's service area to first apply to the Board and receive approval for this action. The language in this statute indicates the Board has authority over all electric suppliers. It does not limit its application to public power agencies.
There do not appear to be any Nebraska cases directly addressing the issue presented in the Board's opinion request. Based on the applicable statutory language and the most closely analogous case law, we believe the Power Review Board has jurisdiction to review and consider whether to approve a proposed private electric power plant prior to its construction.
Sincerely,
 DON STENBERG Attorney General
 Timothy J. Texel Assistant Attorney General
Approved:
_________________________ Attorney General